## CASH COLLATERAL AGREEMENT

This Cash Collateral Agreement dated June 30, 2020 ("**Agreement**") is by and between Great Western Bank ("**Lender**") and Black Bottle Brewery, LLC (the "**Borrower**"). Lender and Borrower are collectively referred to as the "**Parties**" and individually as a "**Party**".

### BACKGROUND

1.  On June 30, 2020 ("Filing Date"), Borrower filed a voluntary petition under Chapter 11, Subchapter V, in the United States Bankruptcy Court for the District of Colorado ("**Court**"), thereby initiating Case No. **20-14472-KHT**.

2.  The Borrower is currently a debtor-in-possession in its Chapter 11 case.

3.  No trustee has been appointed in the Chapter 11 case.

### TERM OF THE AGREEMENT

4.  This Agreement shall commence on the date first set forth above and shall automatically terminate on the first to occur of the following:

    a.  91 calendar days after the Filing Date;

    b.  the conversion of the above-referenced Chapter 11 case to a case under Chapter 7;

    c.  the entry of an order by the Court appointing a trustee in the above-referenced Chapter 11 case;

    d.  Borrower becomes in default under the terms of this Agreement and such default is not timely cured as provided herein; or

    e.  any representation or warranty made herein by the Borrower is materially inaccurate, untrue or false.

### BORROWER'S PRE-PETITION SECURED DEBT

5.  The Borrower acknowledges and represents that to the best of its knowledge, information, and belief :

    a.  the Borrower's indebtedness ("**Indebtedness**") owing to the Lender is evidenced by, *inter alia*, the loan documents ("**Loan Documents**") described attached hereto as **Exhibit A**;

    b.  the Loan Documents are fully enforceable according to their terms and represent a binding obligation of the Borrower;

c. the Lender holds a perfected lien and security interest (hereafter collectively the **"Liens"**) encumbering all personal property owned by the Borrower (collectively the **"Collateral"**), including but not limited to furniture, fixtures, equipment, accounts, inventory, general intangibles, and vehicles, excepting any remaining PPP funds and EIDL loan proceeds received by Debtor. Such funds are not included in any of the values for security set forth in this agreement. The Liens possess priority over any other liens upon the Collateral (except to the extent that any governmental liens may attain priority over the Liens by virtue of the laws of the State of Colorado);

d. the Liens are not avoidable under the provisions of the Bankruptcy Code or other applicable non-bankruptcy law;

e. the Indebtedness owing to the Lender under the Loan Documents as of June 29, 2020 was not less than $962,373.19, inclusive of principal, accrued interest, recoverable attorneys' fees, and legal costs, which sums are calculated as follows:

    i. Loan No. 1552546491

| | |
|---|---|
| Principal: | $815,956.31 |
| Interest: | $13,935.90 |
| Attorneys' Fees: | $18,048.75 |
| Legal Costs: | $744.38 |
| Total | $846,685.34 |

    ii. Loan No. 15525464705

| | |
|---|---|
| Principal: | $99,949.14 |
| Interest: | $2,126.11 |
| Total | $102,075.25 |

    iii. Loan No. 15525470457

| | |
|---|---|
| Principal: | $13,402.17 |
| Interest: | $210.43 |
| Total | $13,612.60 |

f. the Parties have cooperated in a valuation of Debtor's equipment, which was determined, by virtue of an independent third-party appraisal report to have a liquidation value of $207,950.00. The vehicles in which the Bank holds perfected security interests have an estimated value of approximately $20,100.00. The remaining tangible assets plus accounts receivable in which the Bank holds a perfected security interest have an estimated value of approximately $32,856.66. Therefore, the Bank is substantially undersecured, and no other party has any secured interest in any property of the Debtor.

### BORROWER'S CLAIMS AGAINST LENDER

6. The Borrower acknowledges, represents and warrants that it holds no claims against the Lender of any type or kind as of the date of this Agreement; and that the Indebtedness represented by the Loan Documents is not subject to set off, recoupment, counterclaim or any other claim which would reduce, impair, alter, modify, adjust or limit the amount of the Indebtedness now or hereafter due to the Lender.

### POST-PETITION LIENS

7. The Borrower acknowledges and stipulates that it shall not:

   a. seek to or grant any post-petition security interest or lien which would encumber the Collateral pursuant to 11 U.S.C. Section 364(c) or otherwise;

   b. seek to grant a priming lien or security interest senior to the Liens held by the Lender;

   c. consent to the filing of a lien or security interest which would encumber the Collateral; or

   d. incur and fail to timely pay a post-petition date debt which could result in the filing of any liens against Borrowers' Property.

### SURCHARGE AND CARVE OUT

8. The Borrower acknowledges and stipulates that it shall not:

   a. seek to surcharge the Collateral securing the Indebtedness pursuant to 11 U.S.C. Section 506(c); and

   b. seek a "carve out" from the sale proceeds, income, rents, or other amounts received or to be received by the Lender on account of the Liens for the purpose of paying professional fees and expenses incurred by any professional retained by the Borrower, a creditors committee or any party in interest during the pendency of the above-referenced Chapter 11 case except with the consent of the Lender.

### FINANCIAL REPORTS

9. Borrower shall provide the Lender with all monthly financial statements and reports required under the applicable Operating Rules of the Office of the United States Trustee.

### PAYMENTS TO LENDER

10. Borrower shall make a monthly payment ("**Payment**") to the Lender in the total amount of $1,250.00 per month, commencing five (5) days following Court approval of this

Agreement, and continuing each month thereafter on the same day of the month. The Payment shall be made from Debtor's post-petition operating account established by the Borrower in accordance with the Operating Guidelines and Reporting Requirements of the United State Trustee. The foregoing payment shall be delivered to Lender in the same manner as Borrower's payments were to have been made under the Loan Documents prior to the Filing Date. If the day any payment would otherwise be due is a holiday or weekend, then the Payment shall be made on the next succeeding day that is a business day.

## REPLACEMENT LIENS

11. Subject to any required Court approval, the Borrower hereby grants the Lender a valid, perfected and enforceable security interest and lien (the "Replacement Liens") equivalent to a lien granted under the section 364(c) of the Bankruptcy Code in and upon all post-petition assets of the Borrower which are of the same nature or type as the Collateral in which the Lender had an interest prior to the commencement of Case No. **20-14472-KHT** (but excluding claims or causes of action of the Borrower or the estate available through the exercise of the powers granted pursuant to applicable sections of the Bankruptcy Code) whether such property was owned on the Filing Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing, specifically including any proceeds of the foregoing deposited into bank accounts opened prepetition by the Borrower, and the accounts opened by the Borrower after the Filing Date securing payment of any diminution in value of the Collateral.

12. Subject to any required approval of the Court, the Replacement Liens granted hereby shall be valid, perfected, enforceable and effective as of the date hereof without any further action by the Borrower or the Lender, and without the necessity of the execution, filing or recordation of any financing statements, security agreements, or other documents; and shall only secure the payment of indebtedness to the Lender as adequate protection to the extent that the use of the Cash Collateral results in a decrease in the aggregate value of the Lender's interest in such Cash Collateral and any other Collateral.

## USE OF CASH COLLATERAL

13. The Borrower acknowledges, represents and warrants that:

    a. the Borrower's cash on hand at the Filing Date constitutes cash collateral (**"Cash Collateral"**) as defined in 11 U.S.C. Section 363;

    b. pursuant to 11 U.S.C. Section 363(c), the Borrower may not use the Cash Collateral without the consent of the Lender or an order of the Court;

    c. any amounts paid to Lender pursuant to this Agreement shall be applied to the Indebtedness.

14. During the term of this Agreement, and in consideration of the representations, warranties, acknowledgements and the Payments to be paid to the Lender, the Lender:

   a. consents to the Borrower's use of the Cash Collateral to pay administrative costs of Case No. **20-14472-KHT** and the operation of Debtor's business, provided however that fees, costs and expenses incurred by any professional retained by the Borrower shall not be paid until the Court has entered an order approving the same (including any interim order); and

   b. agrees not to seek relief from stay to foreclose the Liens which secure the Lender's Indebtedness.

## DEFAULT

15. In the event of a default under this Agreement by the Borrower, the Lender shall give notice of the default to the Borrower, and the Borrower shall have ten (10) calendar days to cure the default. If the default is not cured, the Lender shall be granted relief from stay to foreclose its Liens securing the Indebtedness as more particularly described below.

16. In the event that a default is not timely cured, counsel for the Lender shall be entitled to file an Affidavit ("**Affidavit**") with the Court advising that (i) a default occurred, (ii) notice of the default was given to the Borrower, and (iii) the default was not timely cured. A form of order granting relief from stay to the Lender shall be attached to the Affidavit. A copy of the Affidavit and form of order shall be sent electronically to counsel for the Borrower, and to the Office of the United States Trustee. A copy of the Affidavit and form of order also shall be mailed to all other creditors and interested parties. The Debtor's sole defense shall be that there was not a default or that such default arose directly from events over which Borrower had no control, such as a public health order suspending all restaurant operations

## NOTICES

17. Notices required by this Agreement shall be given electronically to the Parties as set forth below:
    a. Joint notice to Borrower:
        Gregory S. Bell, Esq. – gbell@bell-law.com

    b. Notice to Lender:
        Michael C. Payne, Esq. – mpayne@cp2law.com

## MISCELLANEOUS

18. This Agreement shall be binding upon (i) the Parties, (ii) a trustee hereafter elected or appointed in the Borrower's above-referenced Chapter 11 case, or in the event of the conversion of the pending Chapter 11 case to a case under Chapter 7, a trustee hereafter elected or appointed in such Chapter 7 case, and (v) any receiver, assignee for the benefit

of creditors or other fiduciary hereafter appointed with respect to the Collateral or the Borrower's business operations. To the extent approved by the Court, this Agreement shall also be binding upon all creditors and parties in interest in the Borrower's above-referenced Chapter 11 case and the successors and assigns of the foregoing.

19. Time is of the essence as concerns this Agreement.

20. In the event of a dispute respecting this Agreement, the Parties agree that Court shall have exclusive jurisdiction to hear and determine all disputes and controversies concerning this Agreement. The Parties stipulate and agree that they shall not file a civil action in any other court to resolve any disputes arising under this Agreement unless the Court declines to exercise jurisdiction over any dispute arising under this Agreement.

21. This Agreement constitutes the entire agreement and understanding between the Parties in regard to the subject matter hereof and supersedes any previous representation, agreement, or understanding.

22. This Agreement shall not be amended or modified, nor rights hereunder waived, except by a writing, signed by all Parties to this Agreement; and no waiver or consent by any Party may be construed by reason of the action or inaction of any other Party to this Agreement.

23. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. Each Party whose signature appears hereon represents, warrants and guarantees that he/she has been duly authorized and has full authority to execute this Agreement on behalf of the Lender or the Borrower, respectively.

25. This Agreement shall be operative upon execution of counterparts sent by electronic mail, with hard copies to serve as confirmation only.

26. This Agreement is the product of mutual negotiation, drafting, and revision, and as such, this Agreement shall be construed neutrally, not against any particular Party designated as the drafting Party.

27. Each Party hereto shall promptly execute and deliver any and all documents and shall do all other acts reasonably necessary to perform its/his/her respective obligations contemplated herein.

28. This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado, and where applicable the provisions of the United States Bankruptcy Code.

29. Each Party represents and warrants that it has not previously or contemporaneously assigned, pledged, or otherwise transferred to a third party outside the ordinary course of business the rights, interest, or claim, governed by this Agreement.

30. Each Party represents that it has made a knowing and informed decision to enter into this Agreement, which decision has included fully reading this Agreement and the related Exhibits.

31. Each Party represents and acknowledges that it is aware that it or its respective attorneys may hereafter discover facts different from or in addition to the facts known or believed to exist at the time of execution of this Agreement, but, nevertheless, it is the intention of each Party to enter into and be bound by this Agreement.

32. In the event of a breach of this Agreement by any Party, the non-breaching Party shall have all the rights and remedies available at law or equity, including specific performance, and shall have the right to recover reasonable attorneys' fees and costs from the breaching Party or Parties for such breach.

33. No person or entity not a party to this Agreement shall hold or exercise any rights under this Agreement.

34. Upon 5 business days' notice to the Borrower, a representative of the Lender may visit the Borrower's office(s) and inspect, review and make copies (at Lender's expense) of all of the Borrower's business records, tax returns and files. Business records, tax returns and files provided to the Lender shall remain confidential.

35. This Agreement shall be binding on the Parties at such time as all Parties have executed this Agreement, provided however if the Court has not entered an order approving this Agreement within 30 days after the date first set forth above, then the Lender in its sole and absolute discretion may unilaterally terminate this Agreement.

## COURT APPROVAL

36. This Agreement is conditioned upon and subject to Court approval after notice to all of the Borrower's creditors and interested parties.

37. Counsel for the Borrower shall file a motion ("**Motion**") seeking approval of this Agreement pursuant to 11 U.S.C. Sections 361 and 363, Rules 2002, 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure, and applicable Local Bankruptcy Rules. The Motion, this Agreement, related 4001 Notice and form of order shall be served on all of the Borrower's creditors and interested parties. The order shall be in a form approved by counsel for the Lender.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Parties have hereunto set their hands and seal the day and year first above written.

**LENDER:**
GREAT-WESTERN BANK

_____
By: Erik Hammer
Its: Loan Workout Manager

**BORROWER:**
BLACK BOTTLE BREWERY, LLC

_____
By: Sean Nook
Its: Manager

# EXHIBIT A

1. Promissory Note dated September 30, 2016 from Black Bottle Brewery, LLC, in the original principal amount of $960,000.00;

2. Promissory Note dated September 30, 2016 from Black Bottle Brewery, LLC, in the original principal amount of $100,000.00; and

3. Promissory Note dated November 29, 2016 from Black Bottle Brewery, LLC, in the original principal amount of $32,500.00.