UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| Black Bottle Brewery, LLC | ) | Case No. 20-11876 EEB |
| 27-2445586 | ) | |
| | ) | Chapter 11 |
| | ) | Subchapter V |
| Debtor. | ) | |

**SUB-CHAPTER V PLAN OF REORGANIZATION DATED SEPTEMBER 24, 2020**

Black Bottle Brewery, LLC (the "Debtor"), the Debtor and Debtor-in-Possession herein, by and through his undersigned counsel, hereby proposes, pursuant to Sub-Chapter V of Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization (the "Plan").

## INTRODUCTION

This Plan and the disclosures contained herein are being provided to all creditors and Interest holders of the Debtor. This Plan is subject to confirmation pursuant to 11 U.S.C. Section 1191 by the United States Bankruptcy Court for the District of Colorado. Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing pursuant to Order of the Court which will be served upon you.

The Plan is the governing document or contract with creditors once it is confirmed by the Court.

**WARNING: IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THE PLAN.**

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows the Debtor to retain its assets during administration of its Chapter 11 case as Debtor-in-Possession and following confirmation of a Plan as a reorganized Debtor making the payments required by the Plan. Once the Plan is confirmed by the Court, the Plan is the permanent restructuring of the Debtor's financial obligations.

The Plan divides creditors into Classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All ownership interests in the Debtor are also classified and treated alike. Each Class of Creditors or Interest holders is either impaired or

1

unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the Class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the Claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing September 8, 2020 (December 28, 2020 for Governmental units) as the last date for filing Proofs of Claim. The Plan provides that Claims and Interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or Interest or which otherwise appear in the Schedules filed by the Debtor and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether or not their Claims have been scheduled as disputed, contingent, or unliquidated by reviewing the Schedules filed by the Debtor with the Court. Alternatively, creditors may directly contact counsel for the Debtor in order to determine how they have been scheduled.

Bankruptcy Code § 11919(a) provides that confirmation of the Plan shall occur if the Plan satisfies all provision of 1129(a) except paragraph 15 of that section. The Plan may also be confirmed under §1191(b) if it meets the requirements of that paragraph and meets all requirements of §1129(a) except paragraphs 8, 10, and 15.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

The Debtor's business is a micro-brewery, bar, and restaurant which has been operating at its current location since 2010. In addition to brew-pub operations, Debtor bottles and distributes beer brewed on site. Debtor employs approximately twenty-one people, and before the current health crisis was on track to do approximately 1.7 Million Dollars in annual sales. It is located less than a half mile from the Colorado State University campus on a high-volume intersection with plenty of parking and outdoor operations areas.

In 2016 one of the owners left and the business was refinanced through a Small Business Administration ("SBA") loan to provide the cash to buy out the departing owner and pay existing liabilities. The refinance created a cash flow bind which was exacerbated over the next three years by additional borrowing to service the debt and rapid expansion of sales and distribution. By the end of 2019, all monthly net cash flow was going to debt service, with no operating capital. This situation, when combined with the public health crisis and food service

2

shutdowns from the COVID-19 pandemic, created a perfect storm which required a complete financial reorganization in order to keep the business operational.

Debtor's assets are all subject to a secured senior SBA loan in favor of Great Western Bank ("Great Western") with a balance of $962,487.57 as of filing. In cooperation with the bank, an appraisal of all assets of the Debtor was done by an independent appraiser selected by the bank. Such appraisal demonstrated that Debtor's liquidation value, including motor vehicles and receivables, was $260,906.66 (less than one-third of the amount owed on the Great Western debt) meaning that in liquidation there would be nothing whatsoever to distribute to general unsecured creditors. Great Western has been cooperative with Debtor's reorganization efforts, consenting to use of cash collateral and entering an agreement for adequate protection payments until Plan confirmation. The essence of the Plan, in cooperation with the Bank, is to generate more funds through operations than could ever be realized through closing of the business and selling its assets.

The Debtor is organized as a limited liability company. Sean Nook is the manager and owns a ninety percent equity interest in the business. He transferred the other ten percent of his interest pre-petition to Mr. Ben Blonder in return for Mr. Blonder furnishing outside funds to pay the retainer for the reorganization filing.

Debtor's food service and bar operations were closed in March 2020, through the end of April. Debtor applied for and received PPP funds in the amount of $120,000.00, all of which were utilized for payroll, rent, and utilities. It is expected that such loan will be forgiven as provided by federal law. Debtor is advised that the $10,000 advance as an EIDL loan cannot be forgiven.

Debtor filed for protection under Subchapter V of Chapter 11 on June 30, 2020. It has resumed operations on a restricted capacity basis and while it had a cash loss during the month of July, excluding non-cash adjustments for the EIDL Loan, amortization, and depreciation, a modest profit of approximately $3552.00 was generated in August. It is unknown what continuing restrictions on occupancy may exist when the weather prevents continued use of the outdoor area, and therefore predictions for this winter are tentative. Debtor intends to cut employees and payroll as necessary to maintain the net cash flow required to meet all Plan obligations.

## DESCRIPTION OF ASSETS

The Debtor's tangible assets consist of restaurant and bar equipment, inventory, brewing equipment, and bottling equipment together with two vehicles used for customer service and distribution. Such assets were appraised at $240,180.66 for all furniture, fixtures, inventory, equipment, and accounts receivable. Titled motor vehicles were valued at $20,100.00. All such assets are subject to a perfected security interest of the SBA through Great Western.

The Debtor is reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550. However, the Debtor's Statement of Financial Affairs does not disclose any unsecured creditors who received significant payments during the avoidance periods under Bankruptcy Code. Payments which were made may be too small or below the jurisdiction limit to pursue avoidance claims.

## DESCRIPTION OF LIABILITIES

**A.    Priority Claims**

**1.    Priority Claims**

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under § 507(a) of the Code, excluding any Administrative Claim or Tax Claims. The Debtor is unaware of any Priority Claims as defined herein.

**2.    Administrative Claims**

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Code and entitled to priority pursuant to §507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases; (b) Professional Fees; (c) all fees and charges assessed against the estates under 28 U.S.C. §1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under §503(b) of the Code. The Administrative Claims, including the Professional Fees incurred during the case which remain unpaid, are as follows:

The Debtor retained Bell Gould Linder & Scott, P.C. ("BGLS") as its bankruptcy counsel. BGLS has recently filed its first fee application in this case, seeking to pay pre-petition fees of $5,871.00 from the retainer furnished by Mr. Blonder and seeking approval of $11,053.25 in fees and $2,585.11 in expenses for post-petition services. As previously described, Mr. Ben Blonder provided BGLS with a retainer in the amount of $10,000.00 to be applied to pre-petition and post-petition services. The Debtor estimates that there will be an Administrative Claim for unpaid legal fees of at least $10,000 on the Effective Date of the Plan. The legal fees could increase or decrease depending on future developments with the business or unforeseen claim issues.

Mr. Mark Dennis, CPA, has been appointed Subchapter V Trustee in this case. Based on inquiry, his fees incurred prior to the review and assistance with this Plan amount to $942.50. The Plan budgets $2500.00 as an Administrative Claim for his allowed fees through confirmation.

The Debtor has paid its other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and, therefore, does not believe there will be any other material Administrative Claims asserted against the estate. The Plan provides adequate funds in the first year to fully pay all known Administrative Claims. Any amount allocated for such claims which is unused shall be retained in the account and ultimately distributed as part of the dividend to Class 4 claims.

### 3. Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8). The Internal Revenue Service filed an amended Proof of Claim (claim number 9) for payroll taxes in the amount of $14,448.57 for payroll taxes due prior to the petition date. The Plan provides for full payment of the unpaid portion of the priority tax claim over the first nine months of the Plan.

Larimer County has filed a Proof of Claim for personal property taxes in the amount of $10,751.17. Such taxes would normally be due in the first quarter of 2021 and will be paid in

the ordinary course as they would come due.

B.   **Secured Claims**

**Great Western Bank. Great Western** holds a secured claim against all of debtor's assets in support of the outstanding SBA loan. Great Western did file a Proof of Claim in the amount of $962,487.57. The portion of such claim which is secured is limited by the value of the security, as previously discussed. Based upon the appraisal and scheduled assets as of the petition date, the secured claim of Great Western is $260,906.66. The Plan proposes to pay this amount plus six percent (6%) interest as amortized on Exhibit B.

**Chase Financial.** Chase Financial is secured pursuant to a purchase money security interest ("PMSI") in a bottling machine, which agreement is supported by a UCC financing statement and is subject to treatment as a purchase money security interest ("PMSI"). Such interest will be paid the scheduled value of the security, $3,000.00, together with interest at six percent (6%) in thirty-six equal monthly payments of $97.27.

C.   **Forgivable Portions of EIDL and PPP Loans**

Debtor received a PPP loan and an EIDL loan advance during the period of mandatory closure. All such funds were utilized for authorized purposes, and it is expected that all debt for PPP funds will be forgiven in accordance with program guidelines. Such debts are classified as "Class 4", which class is unimpaired. However, Debtor is advised that the $10,000 advance as an EIDL loan cannot be forgiven, and as such shall be a Class 4 claim. Any other unforgiven portion of Class 3 Debts will be treated as a Class 4 Debt.

D.   **Non-Priority Unsecured Creditors**

The remainder of Debtor's pre-petition debts are unsecured. Eight (8) of the unsecured creditors have filed Proofs of Claims. The bar date for filing Proofs of Claims against the Debtor was September 8, 2020. To the extent that a creditor timely filed a Proof of Claim to which Debtor files no objection, the amount of the Claim as filed in the Proof of Claim will be used for purposes of plan administration. The Claims list containing both scheduled and timely filed unsecured Claims against the Debtor is attached hereto as Exhibit A. Including scheduled claims, timely filed unscheduled claims, the unsecured portion of the Great Western claim, the

unsecured, non-priority portion of the claim by the IRS and the unsecured portion of the Chase Finance claim, allowed unsecured Claims are calculated to be $1,238,529.86 Such claims shall share all remaining funds after payment of Administrative Claims, Priority claims, and Secured Claims. The estimated dividend to be shared pro-rata among all unsecured creditors who were scheduled or filed timely Claims is estimated to be $54494.37, or 4.4% of such claims.

## THE PLAN
## ARTICLE I
## DEFINITIONS

1.01 – <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 1114(e)(2) of the Code and entitled to priority pursuant to § 507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fees; (c) all fees and charges assessed against the estate under 28 U.S.C. § 1930; (d) certain post-petition tax claims; and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under § 503(b) of the Code.

1.02 – <u>Allowed Claim</u> shall mean a Claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by the Court in the case or scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no timely objection to the allowance thereof has been filed pursuant to Rules 3001 and 3007, or as to which any such objection has been determined by a Final Order.

1.03 – <u>Allowed Secured Claim</u> shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such Allowed Claim and the Debtor's interest in such property or to the extent of the amount

subject to such setoff as the case may be.

1.04 – <u>Avoidance Actions</u> shall mean the Debtor's estate's interest in any and all claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Code, regardless of whether or not such actions have been commenced prior to the Effective Date of the Plan.

1.05 – <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

1.06 – <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article II of the Plan.

1.07 – <u>Class 1-5 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article II of the Plan.

1.08 – <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq. and any amendments thereof.

1.09 – <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

1.10 – <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

1.11 – <u>Debtor</u> shall mean the Debtor who is proposing this Chapter 11 Plan.

1.12 – <u>Disputed Claim</u> shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the case, or any Claim against which an

8

objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

    1.13 – <u>Effective Date of the Plan</u> shall mean the Confirmation Date.

    1.14 – <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending, or if appealed shall have been affirmed or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken for granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived

    1.15 – <u>Interest</u> shall mean any member or shareholder interest or any other instrument evidencing any ownership interest in the Debtor and any option, warrant or right of any nature, contractual or otherwise, to acquire a member or other ownership interest in the Debtor.

    1.16 – <u>Order of Confirmation</u> shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

    1.17 – <u>Petition Date</u> shall mean March 13, 2020, the date on which the Debtor filed its Voluntary Petition.

    1.18 – <u>Plan</u> shall mean this Plan of Reorganization, including all exhibits and schedules attached hereto or referenced herein or therein.

    1.19 – <u>Priority Claim</u> shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

    1.20 – <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

    1.21 – <u>Professional Fees</u> shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to §§ 330, 331 and 503(b) of the Code by a

professional.

1.22 – <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

1.23 – <u>Tax Claim</u> shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to § 507(a)(8) of the Code except the personal property tax claim of Larimer County for 2020 personal property taxes, which will be paid on or before its regular due date..

1.24 – <u>Unclassified Priority Claims</u> shall mean Claims pursuant to § 507(a)(2) of the Code which are Administrative Claims allowed under § 503(b) of the Code and any fees and charges against the estates under Chapter 23 of Title 28 of the United States Code and shall further mean Allowed unsecured Claims of governmental units to the extent provided for in § 507(a)(8) of the Code.

1.25 – <u>Creditor Account</u> shall mean that segregated account referenced and established pursuant to paragraphs 3.2 and 8.2 of this Plan, into which the Debtor will deposit the amount set forth in Schedule B, Column "C" every month for sixty (60) months in accordance with the terms of this Plan. At the end of each month, the balance of the Creditor Account will be distributed as set forth on Schedule E. The account will be maintained at a federally insured banking institution and shall be maintained within the insurance limit of the institution.

1.26 – <u>Other Definitions.</u> Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all Classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

<u>Class 1</u> – All Allowed unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority, together with Tax Claims and Administrative Expenses.

<u>Class 2</u> – The Allowed Secured Claims of Great Western Bank and Chase Financial.

10

<u>Class 3</u> – Forgivable Unsecured claim for PPP and EIDL Funds

<u>Class 4</u> – The Allowed Claims held by unsecured creditors.

<u>Class 5</u> – The equity interests in the Debtor entity.

# ARTICLE III
## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

3.1 – The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, together with Priority Tax Claims and Administrative Claims, shall receive cash equal to the amount of their Allowed Claim, or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Professional Fees shall be included as Administrative Claims to the extent approved by the Court within sixty (60) days of confirmation. Such Claims shall be paid from the Distribution Account established pursuant to paragraphs 3.2 and 8.2 of this Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance.

3.2 – Upon the Effective Date of the Plan, the Debtor shall make payments to the Creditor Account on behalf of holders of claims as set forth in <u>Schedule B</u> as follows:

1. Debtor shall make payments into the Creditor Account beginning November 15, 2020 in amounts as set forth on <u>Exhibit B</u>, Column "C".

2. Initial Payments shall include the amortized payment of the Secured PMSI claim of Chase Financial in the monthly amount of $97.27 as set forth on <u>Exhibit B</u>.

3. In addition to the monthly payment on the Chase Secured Claim, Payments through October of 2021 shall be distributed from the Creditor Account to satisfy Administrative, Priority, and Tax Claims existing as of the date of this plan as well as the amortized payment on the secured debt to Chase and the interest on the Great Western claim, all as set forth in Schedule C. Thereafter, any additional Administrative or Priority claims which arise shall be paid as monthly operating expenses.

4. All secured creditors shall maintain their security interest as security for full payment of all amounts due under the Plan.

5. Upon satisfaction of all Allowed Secured Claims, the balance of payments shall be distributed Pro-Rata among all class 4 creditors. <u>A projected table of distributions based upon full forgiveness of the PPP loan and no forgiveness of the EIDL loan is set forth in Schedule A.</u>

3.3 – The Allowed Claim of Larimer County for 2020 personal property taxes, of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid directly when due in 2021. Such claim is unimpaired by the Plan.

## ARTICLE IV
## SPECIFICATION AND TREATMENT OF CLASS 1 CLAIMS

4.1 - Allowed Class 1 Claims, including Administrative Expense Claims, Professional Fees approved by the Court, and Priority Tax Claims shall be paid in full over the first twelve months of the Plan. Distributions from the Creditor account to Class 1 Claims shall be as itemized on Schedule C. Any additional amounts required to fully satisfy claims in this class shall be added to the October 2021 payment by the Debtor.

## ARTICLE V
## SPECIFICATION AND TREATMENT OF SECURED CLAIMS

5.1 – Class 2 claims are Secured Claims and will be paid the value of their security plus six percent interest until the secured claims are fully paid. These claims consist of the Purchase Money Security Interest of Chase Finance and the claim of Great Western Bank on behalf of the Small Business Administration. The Class 2 secured Claims are impaired by this Plan in both timing of payments and interest rate.

## ARTICLE VI
## TREATMENT OF FORGIVEABLE PPP AND EIDL ADVANCES

6.1 – Class 3, that portion of Unsecured Claim for PPP and EIDL loans which is subject to forgiveness from prepayment so long as utilized in accordance with program requirements. All except $10,000.00 of the Class 3 claims are expected to be forgiven

12

pursuant to the terms of the programs under which they arose. Such Class is unimpaired.

# ARTICLE VII
# SPECIFICATION AND TREATMENT OF UNSECURED CREDITOR CLAIMS

7.1 – Class 4 consists of the scheduled unsecured creditors of the Debtor and any unscheduled creditor which filed an unsecured proof of claim, including EIDL Loan claims which are not subject to forgiveness. Class 4 shall receive payment of their Allowed Claims as set forth below:

a. Holders of Class 4 Allowed Claims shall share on a Pro-Rata basis monies deposited into the Distribution account after full payment of classes 1, 2, and 3. As discussed in Section D of the description of liabilities, the estimated dividend to be shared Pro-Rata among all unsecured creditors who were scheduled or filed timely Claims is estimated to be $54494.37, or 4.4% of such claims.

# ARTICLE VIII
# SPECIFICATION AND TREATMENT OF CLASS 5 INTERESTS

8.1 – Class 5 includes the Interests of the Debtor's equity security holders, Mr. Nook and Mr. Blonder, which Interests are impaired by the Plan. Upon confirmation of the Plan, the Equity Security Holders will retain their Interests in the Debtor. During the term of the plan, no distributions may be made on account of equity security interests except as necessary to offset incurred tax liability of the members for the profits of Debtor, and then only of all other obligations are current and Debtor holds a cash contingency reserve equal to at least five percent (5%) of all remaining Plan payments.

# ARTICLE IX
# MEANS FOR THE PLAN'S EXECUTION

9.1 – Operation of Business. The Debtor shall be empowered to take such action as may be necessary to perform his obligations under this Plan. Sean Nook, who holds a ninety percent (90%) membership interest in the Debtor will remain employed at his existing compensation, which is $2,650.00 every two weeks. His wife Erin receives $1,678.44 bi-weekly to handle all social media and advertising for the Debtor, and she shall remain employed unless the business

is forced to close again due to public health orders. Such compensation shall not increase during the term of the Plan. All health and insurance benefits for all employees shall continue during the Plan period. All members of the business will, to the extent that the business generates taxable K-1 profits, be entitled to reimbursement from the company the amount of the income taxes that would be attributable to such income. Plan payments are designed to rise with the projected end of the current pandemic, based on current public health expectations for treatment or a vaccine by the first quarter of 2021. Management will manage labor costs and attempt to increase wholesale of brewed beer to generate necessary funds for the Plan payments until the business can resume at full occupancy.

9.2 – Creditor Account. On the Effective Date of the Plan, the Debtor will open a separate interest-bearing deposit account at a federally insured commercial bank selected by the Debtor. The bank account will be maintained by the Debtor as the Creditor Account into which all Plan payments made by the Debtor will be made until the obligations under the Plan are completed.

9.3 – Effectuating the Plan. On the Effective Date of the Plan, the Debtor shall serve as the agent pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plans, including, but not limited to, executing documents.

9.4 – Disputed Claim Procedure. Distributions to any Class of creditors will only be made on account of Allowed Claims. In the event that distributions are made at a time that a Claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held by the Debtor in an interest bearing bank account until the Claim is allowed or disallowed. If allowed, the Claim will be paid its appropriate share of the withheld payment. If disallowed, the withheld distribution will be paid on a Pro-Rata basis to the remaining impaired Class 4 claimants of the Debtor who hold Allowed Claims.

9.5 – Claims and Litigation Bar Date and Standing. All Claim objections and Avoidance Actions in the case must be filed by the later of (a) limitation period set forth in § 546(a) of the Code, or (b) sixty (60) days following the Effective Date of the Plan. The Debtor shall have standing to commence, prosecute, and settle Claim objections and

Avoidance Actions without need for Court approval. The Debtor has retained Bell, Gould, Linder & Scott, P.C. to litigate any Claim objections and Avoidance Actions on an hourly basis and/or a contingency fee basis, as it determines is reasonable and in the best interest of the estate.

9.6 – Administrative Expense Bar Date. All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within ninety (90) days following the Effective Date of the Plan.

9.7 – Monthly Installments. Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the first weekday after the fourteenth day of the calendar month in which the payment is due, unless otherwise specified in the Plan. The Debtor shall then have a ten (10) day grace period within which the monthly payment must be received by the payee before the Debtor shall be in default, unless a longer period is specified elsewhere in the Plan.

9.8 – Final Decree. The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or one hundred eighty (180) days after the Effective Date of the Plan.

9.9 – Reporting. After Confirmation, Debtor shall have no continuing obligation to file monthly operating reports with the office of the United States Trustee.

9.10 – Exemption from Transfer Taxes. Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.11 – Contractual Relationship. The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors. In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of its rights and remedies under its

security documents, including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon the Debtor's failure to cure the default within such ten (10) day period, the creditor may proceed to exercise its rights and remedies.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 – On the Effective Date of the Plan, the Debtor does hereby reject those executory contracts and unexpired leases not expressly rejected or which have not been assumed by order of the Court prior to the Confirmation Date. Debtor knows of no such leases or executory contracts except the lease for the business premises, which has been expressly assumed.

10.2 – Confirmation of the Plan constitutes approval by the Court of the rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of § 365 of the Code and the Rules.

10.3 – Claims Arising from Rejection. All Proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of: (i) the date of the Court's order approving the rejection of such executory contract or unexpired lease; (ii) rejection by operation of law under the Code; or (iii) the Confirmation Date. Any Claims not filed within such time shall be forever barred against the Debtor, its estates and property, and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent allowed, shall be treated as Class 4 unsecured Claims.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 – Revestment. On the Effective Date of the Plan, all property of the estate shall

revest in the Debtor free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.

    11.2 – Retention of Jurisdiction. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

(a) Determination of the allowability of Claims upon objection to such Claims by the Debtor or by any other party in interest;

(b) Determination of the request for payment of Claims entitled to priority under § 507(a)(2) of the Code, including compensation of the parties entitled thereto;

(c) Resolution of any disputes regarding interpretation of the Plan;

(d) Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

(e) Modification of the Plan pursuant to § 1127 of the Code;

(f) Adjudication of any causes of action, including Avoidance Actions, brought by the Debtor, by the representative of the estate or by a Trustee appointed pursuant to the Code;

(g) Adjudication of any cause of action brought by the Debtor, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in §§ 542-549 of the Code. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

(h) Entry of a final decree.

    11.3 – Satisfaction of Claims. The Debtor shall receive a discharge pursuant to Sections 1192 and 1141(d) of the Code upon the completion of payments to Administrative claimants holding allowed Claims and to Class 5 in accordance with the terms of this Plan. Confirmation of the Plan and the occurrence of the Effective Date of the Plan shall constitute a modification of any note or obligation for which specification and treatment is

provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date of the Plan. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4 – Headings. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5 – Notices. All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

      a.    To the Debtor:
Black Bottle Brewery, C/O Sean Nook, Manager
1611 S. College Ave. Suite 1609
Fort Collins, CO  80525

With a copy to:
Gregory S. Bell
Bell Gould Linder & Scott, P.C.
318 East Oak Street
Fort Collins, CO 80524
Email: gbell@bell-law.com

      b.    To an allowed claimant, at the address set forth in the allowed Proof of Claim, if filed, or at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.5 – Successors and Assigns. The Plan will be binding upon the Debtor, any creditor affected by the Plan and its heirs, successors, assigns and legal representatives.

11.6 – Unclaimed Payments. If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 10.5 of the Plan, within six months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

## ARTICLE XII
## CONFIRMATION REQUEST

12.1 – The Debtor, as the proponent of the Plan, requests confirmation of the Plan pursuant to § 1191 of the Code.

### PLAN FEASIBILITY

The Debtor believes that the Plan, as proposed, is feasible. The funding for the Plan will come from the Debtor's operations, and projections are based upon current restrictions applied to historic levels of business. Attached hereto as Schedule D is the Debtor's five (5) year projection for its financial performance for the five-year term of the Plan. Exhibit E is referred to herein as the "Projections." As detailed in the Projections, the Debtor will have sufficient cash on hand and profits during the term of the Plan to satisfy its Plan obligations. The Debtor's Projection show the Debtor's projected total gross income for the five year term of the Plan to be $7,328,421.43. The Projections show total expenses during that period of $6,912,668.84. Based upon the Projections, the Debtor's projected disposable income during the term of the Plan is $415,752.59 less $27,828.41 which would be required as a contingency and, if available, to offset the tax liability of the equity security holders, resulting in a net of $387,924.18 which is being dedicated to repayment of creditors under the Plan.

### TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or Interest holders. Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year, in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

### LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the assets. The assets would be liquidated, and

the proceeds distributed to creditors in the order of their priorities. Under a Chapter 7 liquidation, secured creditors would likely seek to obtain relief from the automatic stay and foreclose their security interests in Debtor's property.

As described in the asset section of this Plan, the Debtor has assets with a total liquidation value of $263,906.66, all of which are secured to Great Western except the Bottling machine (valued at $3,000.00), which is secured to Chase Financial. The liens encumbering the assets substantially exceed the value of such assets. Therefore, unsecured creditors would stand to receive nothing in a liquidation.

Under the Plan the Debtor is projected to pay $54,494.37 to unsecured creditors. It is projected that the total Class 4 Allowed Claims will total $1,238,529.86. The Plan contemplates that all creditors holding Allowed Unsecured Claims received a pro rata distribution, the percentage of which could vary depending upon the final disposition of Class 3 claims, but would be 4.4% if such claims are, as expected, forgiven. This is compared to a zero distribution in a Chapter 7 case.

DATED: September 25, 2020

**Black Bottle Brewery, LLC**

By: /s/ Sean Nook
    Sean Nook, Manager

**BELL GOULD LINDER & SCOTT, P.C.**

By /s/Gregory S. Bell
    Gregory S. Bell, #9630
    Attorney for Debtor
    318 E. Oak St.
    Fort Collins, CO 80524
    Telephone: (970) 493-8999
    Facsimile: (970) 224-9188
    gbell@bell-law.com